# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JAMES O'NEILL, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR** |
| | ) | **VIOLATIONS OF THE** |
| NEOLEUKIN THERAPEUTICS, INC., | ) | **FEDERAL SECURITIES LAWS** |
| MARTIN BABLER, M. CANTEY BOYD, | ) | |
| ERIN LAVELLE, SARAH NOONBERG, | ) | JURY TRIAL DEMANDED |
| ROHAN PALEKAR, and TODD SIMPSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff James O'Neill ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Neoleukin Therapeutics, Inc. ("Neoleukin" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with Neurogene Inc. ("Neurogene").[1]

---

[1] The proposed business combination described herein is referred to throughout as the "Proposed Transaction."

2. On July 17, 2023, Neoleukin entered into an Agreement and Plan of Merger (the "Merger Agreement") with Neurogene and Neurogene's wholly-owned subsidiary Project North Merger Sub, Inc. The Merger Agreement provides that Neoleukin and Neurogene will combine, with: (a) Neurogene common stock converted into the right to receive a number of shares of Neoleukin common stock equal to the exchange ratio, which is expected to be equal to approximately 0.3117x shares of Neoleukin common stock for each share of Neurogene capital stock based on Neoleukin's and Neurogene's capitalization as of October 31, 2023, after giving effect to a 1-for-5 reverse stock split for Neoleukin common stock that was effected on September 25, 2023; and (b) Neoleukin's stockholders receiving a contingent value right ("CVR") representing the right to receive certain payments from proceeds received by the combined company, if any, related to Neoleukin's pre-transaction legacy assets or from savings realized by the combined company, if any, related to the reduction of Neoleukin's legacy lease obligations.[2]

3. The Company's corporate directors subsequently authorized the August 21, 2023, filing of a materially incomplete and misleading Form S-4 Registration Statement (as amended on September 28, 2023, October 18, 2023, and November 8, 2023, the "Registration Statement") with the SEC. The Registration Statement, which recommends that Company

---

[2] In connection with the Proposed Transaction, Neurogene announced an oversubscribed $95 million private financing led by new and existing healthcare-dedicated specialist and mutual fund institutional investors (the "pre-closing financing"). Upon closing of the Proposed Transaction, Neoleukin's current stockholders will own approximately sixteen percent of the combined company, Neurogene's current stockholders will own approximately fifty-seven percent of the combined company, and holders of Neurogene common stock and pre-funded warrants issued in the pre-closing financing will own approximately twenty-seven percent of the combined company.

unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Registration Statement is disclosed to the Company's unitholders prior to the forthcoming vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

---

[3] The Special Meeting at which Neoleukin unitholders are asked to approve Proposed Transaction currently is scheduled for December 13, 2023.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Neoleukin common units.

6.      Defendant Neoleukin is a Delaware corporation with principal executive offices located at 188 East Blaine Street, Suite 450, Seattle, Washington 98102. Neoleukin's shares trade on the Nasdaq Capital Market under the ticker symbol "NLTX." Neoleukin is a biopharmaceutical company that historically developed immunotherapies for cancer, inflammation, and autoimmunity disorders using protein design technology. The Company's lead product candidate was NL-201, a de novo protein designed to mimic the therapeutic activity of the cytokines interleukin (IL)-2/IL-15 for the treatment of various types of cancer, including renal cell carcinoma and melanoma. In November 2022, Neoleukin announced its decision to discontinue development of NL-201, and turn its focus to the next generation of *de novo* cytokine mimetics that further widen the therapeutic window. Subsequently, in March 2023, the Company determined to focus on seeking strategic alternatives rather than the development of drug candidates.

10.     Defendant Martin Babler is and has been a director of the Company at all times relevant hereto.

11.     Defendant M. Cantey Boyd ("Boyd") is and has been a director of the Company at all times relevant hereto. Defendant Boyd is also a Managing Director at Baker Bros. Advisors LP ("Baker Brothers"), the Company's largest stockholder, owning 19.99% of the Company's outstanding shares. Defendant Boyd is Baker Brothers' Board designee.

12. Defendant Erin Lavelle is and has been a director of the Company at all times relevant hereto.

13. Defendant Sarah Noonberg is and has been a director of the Company at all times relevant hereto.

14. Defendant Rohan Palekar is and has been a director of the Company at all times relevant hereto.

15. Defendant Todd Simpson is and has been a director of the Company at all times relevant hereto.

16. Defendants identified in paragraphs 11-15 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

17. On July 18, 2023, Neurogene and the Company jointly announced in relevant part:

> NEW YORK and SEATTLE, July 18, 2023 (GLOBE NEWSWIRE) -- Neurogene Inc., a clinical-stage company founded to bring life-changing genetic medicines to patients and families affected by rare neurological diseases, and Neoleukin Therapeutics, Inc. (NASDAQ:NLTX) today announced that they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on advancing Neurogene's pipeline of differentiated genetic medicines, including NGN-401, a clinical-stage product for Rett syndrome, which uses novel gene regulation technology for a potential best-in-class profile. Upon completion of the merger, which is subject to approval by Neurogene and Neoleukin stockholders, the combined company is expected to operate under the name Neurogene Inc. and trade on the Nasdaq Capital Market under the ticker symbol "NGNE."
>
> In connection with the merger, Neurogene announced an oversubscribed $95 million private financing led by new and existing healthcare-dedicated specialist and mutual fund institutional investors, including participation from Great Point

Partners, EcoR1 Capital, Redmile Group, Samsara BioCapital, Janus Henderson Investors, funds and accounts managed by Blackrock, Casdin Capital, Avidity Partners, Arrowmark Partners, Cormorant Asset Management, Alexandria Venture Investments, and a healthcare investment fund.

With the cash from both companies at closing and the proceeds of the concurrent private financing, the combined company is expected to have approximately $200 million of cash or cash equivalents immediately following the closing. The cash resources are intended to be used to advance Neurogene's pipeline through multiple clinical milestones and are expected to fund operations into the second half of 2026. The merger and concurrent private financing are expected to close in the fourth quarter of 2023, subject to stockholder approval of both companies, the effectiveness of a registration statement to be filed with the U.S. Securities and Exchange Commission to register the securities to be issued in connection with the merger and concurrent financing, and the satisfaction of customary closing conditions.

"We are excited to announce our planned merger with Neoleukin, which we believe is a transformative step forward in our mission to bring life-changing genetic medicines to the patients and families impacted by devastating neurological diseases," said Rachel McMinn, Ph.D., Founder and Chief Executive Officer of Neurogene. "This transaction is expected to bolster our ability to progress our differentiated pipeline, including our clinical-stage program in Rett syndrome which contains our novel, proprietary EXACT technology. We believe EXACT represents a meaningful technological advance for the gene therapy field, allowing us to develop therapeutic product candidates for complex diseases with attractive market opportunities not addressable with conventional gene therapy. This capital will also support our internal manufacturing capabilities, which we expect will continue to provide significant financial and strategic flexibility. With cash on hand at the close of this transaction expected to fund operations into the second half of 2026, we believe we are well positioned to successfully execute beyond multiple anticipated clinical inflection points for both Rett syndrome and Batten disease, and advance our discovery stage pipeline."

"This merger with Neurogene reflects the continued commitment of our management team and Board of Directors to deliver value to stockholders and, importantly, meaningfully improve patients' lives," said Donna Cochener, Interim Chief Executive Officer and General Counsel of Neoleukin. "Neurogene has an innovative genetic medicines portfolio, in-house product design and manufacturing capabilities, an impressive management team, and will be well positioned to deliver multiple data readouts in the next 18 to 24 months. We are grateful to our current and former employees who contributed to Neoleukin's efforts and look forward to the combined company's continued progress and success."

**About Neurogene's Portfolio and EXACT Gene Regulation Platform**

Neurogene's internally manufactured portfolio of purposefully designed therapies aims to address several key limitations of conventional gene therapies, including variable gene expression, safety limitations, and inefficient gene delivery.

The company's novel and proprietary Expression Attenuation via Construct Tuning (EXACT) gene regulation platform technology is a self-contained transgene regulation platform that can be tuned to deliver a desired level of transgene expression within a narrow range, potentially avoiding transgene related toxicities associated with conventional gene therapy. EXACT is compatible with viral and non-viral delivery platforms.

Neurogene's clinical-stage portfolio includes:

**NGN-401:** NGN-401 is an investigational AAV9 gene therapy being developed as a one-time treatment for Rett syndrome. It is the first candidate to deliver the full-length human MECP2 gene under the control of Neurogene's EXACT technology. Embedding EXACT technology into NGN-401 is an important advancement in gene therapy for Rett syndrome, specifically because the disorder requires a treatment approach that enables targeted levels of MECP2 transgene expression without causing toxic effects associated with conventional gene therapy. Rett syndrome is a debilitating, X-linked, neurodevelopmental disorder with significant unmet medical need, and one of the most common genetic causes of developmental and intellectual impairment in females.

The robust preclinical data package for NGN-401 provides evidence of a potentially compelling efficacy and safety profile in Rett syndrome. The company's Investigational New Drug (IND) application was cleared by the U.S. Food and Drug Administration in January 2023. In the U.S., NGN-401 has received Orphan Drug Designation, Rare Pediatric Disease Designation, and Fast Track designation. Neurogene plans to commence dosing in a Phase 1/2 trial (NCT05898620) designed to assess the safety, tolerability, and efficacy of a single dose of NGN-401 in female pediatric patients with Rett syndrome in the second half of 2023, with preliminary data expected in the fourth quarter of 2024 from the first cohort of patients, and additional expected data in the second half of 2025 from an expanded set of patients.

**NGN-101:** NGN-101 is being developed as a one-time treatment for both ocular and neurological manifestations of CLN5 Batten disease using AAV9 to deliver the gene encoding CLN5, which is deficient in children with the disease. Batten disease is a family of rare neurodegenerative diseases caused by pathogenic changes in one of a series of genes that results in the accumulation of toxic

deposits across multiple organ systems. CLN5 Batten disease is a rare, pediatric-onset and rapidly progressive condition caused by a pathogenic mutation in the CLN5 gene, leading to loss of function. It is characterized by loss of vision, seizures, and progressive decline in intellectual and motor capabilities beginning in childhood leading to substantial impairments and early mortality.

In preclinical studies, NGN-101 has demonstrated the potential to slow or halt the key features of disease progression, including associated vision and motor declines. NGN-101 has received Orphan Drug Designation by U.S. and European regulatory agencies and is currently being evaluated in a Phase 1/2 clinical trial in children with CLN5 Batten disease (NCT05228145). Preliminary data is expected in the second half of 2024.

In addition to these two clinical-stage programs, Neurogene is also advancing a discovery-stage candidate that will expand its pipeline into an additional area of high unmet need. Neurogene expects to initiate a clinical study of this candidate in 2025.

**About the Proposed Merger**

Under the terms of the merger agreement, Neoleukin will issue to pre-merger Neurogene stockholders shares of Neoleukin common stock as merger consideration in exchange for the cancellation of shares of capital stock of Neurogene, and Neurogene will become a wholly owned subsidiary of Neoleukin. Pre-merger Neoleukin stockholders are expected to own approximately 16% of the combined company and pre-merger Neurogene stockholders (including those purchasing Neurogene shares in the concurrent private financing discussed above) are expected to own approximately 84% of the combined company. The percentage of the combined company that pre-merger Neurogene stockholders and pre-merger Neoleukin stockholders will own as of the close of the proposed transaction is subject to certain adjustments as described in the merger agreement, including the amount of Neoleukin's net cash at closing. In connection with the closing of the proposed transactions, Neoleukin stockholders will also be issued contingent value rights representing the right to receive certain payments from proceeds received by the combined company, if any, related to Neoleukin's pre-transaction legacy assets or from savings realized by the combined company, if any, related to the reduction of Neoleukin's legacy lease obligations.

Upon closing of the proposed transaction, Neoleukin Therapeutics, Inc., will be renamed Neurogene Inc. The combined company will be led by Rachel McMinn, Ph.D., Founder and Chief Executive Officer of Neurogene, and other members of the Neurogene management team. The combined company's Board of Directors will be comprised of five board members selected by Neurogene and two members selected by Neoleukin. The transaction has been unanimously

approved by the Board of Directors of each company and is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including the approval of the transaction by the stockholders of each company.

TD Cowen is serving as exclusive financial advisor to Neurogene. TD Cowen and Stifel are serving as placement agents on Neurogene's planned concurrent private financing. Gibson Dunn & Crutcher LLP is serving as legal counsel to Neurogene and Cooley LLP is serving as legal counsel to the placement agents. Leerink Partners is serving as the exclusive financial advisor to Neoleukin. Fenwick & West LLP is serving as legal counsel to Neoleukin.

**The Materially Incomplete and Misleading Registration Statement**

18. The Board caused to be filed the materially incomplete and misleading Registration Statement with the SEC on November 8, 2023. The Registration Statement, which recommends that Neoleukin unitholders vote their units in favor of the Proposed Transaction, fails to disclose material information to Company unitholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Neoleukin and Neurogene; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor Leerink Partners LLC ("Leerink Partners"); and (c) potential conflicts of interest faced by Leerink Partners and Baker Brothers.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for the Company and Neurogene*

19. The Registration Statement fails to disclose material information concerning the financial forecasts for Neoleukin and Neurogene, including certain expense forecasts prepared by Neoleukin management and relied upon by Leerink Partners.[4]

---

[4] See Registration Statement 129, stating that, in connection with its fairness opinion, Leerink Partners reviewed "certain internal information, primarily related to expense forecasts, relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Neoleukin, as furnished to Leerink Partners by the management of Neoleukin."

9

20. Regarding the *Liquidation Analysis* prepared the Company's management, the Registration Statement fails to disclose: (a) Neoleukin's fully diluted outstanding shares; and (b) the estimated amount of wind-down costs, the amount required to settle Neoleukin's remaining obligations under current contracts, the cost to retain employees to facilitate the wind-down and the satisfaction by Neoleukin of its remaining obligations (including obligations to continue SEC filings), and the need to retain funds beyond that distribution for unknown or contingent liabilities.

21. The Registration Statement fails to disclose the line items underlying forecasted Total Adjusted Net Revenues and Unlevered Free Cash Flow for Neoleukin's management prepared risk-adjusted financial forecasts regarding Neurogene for the fiscal years from 2023 to 2041 (the "Financial Forecasts").

22. The Registration Statement fails to disclose the probability of success attributed to Neurogene's product candidates in the Financial Forecasts.

23. The Registration Statement further fails to disclose a summary of the non-risk-adjusted projections for Neurogene.

*Material Misrepresentations and/or Omissions Concerning Leerink Partner's Financial Analyses*

24. The Registration Statement fails to disclose material information concerning Leerink Partners' financial analyses.

25. As to the *Valuation Analysis - Discounted Cash Flow* performed by Leerink Partners, the Registration Statement fails to disclose the Company's terminal values.

26. As to the *Additional Factors Observed by Leerink Partners—Selected Public Companies* performed by Leerink Partners, the Registration Statement fails to disclose: (a) the financial advisor's basis for assuming a twenty percent illiquidity discount to the derived

adjusted equity value range for Neurogene; and (b) Neoleukin's fully diluted outstanding shares.

*Material Misrepresentations and/or Omissions Concerning Leerink Partners' and Baker Brothers' Potential Conflicts of Interest*

27. The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by Leerink Partners, including whether Leerink Partners has performed any services for Neurogene, Neoleukin, Baker Brothers, or their respective affiliates, in the prior two years and, if so, the nature of the services performed and amount of compensation received.

28. The Registration Statement fails to disclose material information concerning Baker Brothers' involvement in the combined company, including what percentage of the combined company Baker Brothers will own and the details of Baker Brothers' participation in the pre-closing financing, if any.[5]

29. The omission of the above-referenced information renders statements in the "Financial Forecasts," "Neoleukin Liquidation Analysis," "Opinion of Leerink Partners to the Neoleukin Board of Directors," and "Background of the Merger" sections of the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[5] The the press release announcing the Proposed Transaction stated that participants in the pre-closing financing include "new and existing healthcare-dedicated specialist and mutual fund institutional investors, including . . . Great Point Partners, EcoR1 Capital, Redmile Group, Samsara BioCapital, Janus Henderson Investors, funds and accounts managed by Blackrock, Casdin Capital, Avidity Partners, Arrowmark Partners, Cormorant Asset Management, Alexandria Venture Investments, and a healthcare investment fund." *See* Registration Statement at 2, 248.

30. Absent disclosure of the foregoing material information prior to the unitholder vote, Plaintiff and the other unitholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Neoleukin**

31. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

32. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Neoleukin is liable as the issuer of these statements.

33. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

34. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

35. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and

accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to unitholders.

36. The Registration Statement is an essential link in causing Plaintiff and the Company's unitholders to approve the Proposed Transaction.

37. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

38. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Neoleukin within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Neoleukin and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

42. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

43. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and

disseminate the material information identified above to Company unitholders;

      B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

      C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

      D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

      E.    Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 16, 2023            **LONG LAW, LLC**

By: */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com

*Attorneys for Plaintiff*